UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

YAKATERINA KOLBASKO,              )
                                  )
        Plaintiff,                )
                                  )
vs.                               ) Case No. 4:23CV587  HEA
                                  )
EQUIFAX INFORMATION               )
SERVICES, LLC, et al.,            )
                                  )
        Defendants.               )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Midland Credit Management,

Inc.'s Motion for Summary Judgment, [Doc. No. 78]. Plaintiff opposes the Motion.

For the reasons set forth below, the Motion will be granted in part and denied in

part.

## Facts and Background

Plaintiff brought this action against Defendant Midland Credit Management,

Inc, ("Midland"), as well as several Credit Reporting Agencies ("CRAs), and one

other furnisher of credit information.[1] Plaintiff alleges violations of the Fair Credit

Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA")

---

[1] The CRAs, Equifax Information Services, LLC, Experian Information Solutions, Inc., Trans Union LLC, and furnishing company Portfolio Recovery Associates, L.L.C. have been dismissed, leaving Midland the sole remaining defendant.

after Midland failed to correct information on her credit report regarding a debt she allegedly owed.

In September 2022, Midland filed a lawsuit against Plaintiff attempting to collect on two accounts (Citibank/Costco and Synchrony/Walmart). Midland and Plaintiff reached an agreement and a judgment of dismissal with prejudice was filed on December 30, 2022. The CRAs continued reporting the debt on Plaintiff's credit report despite her multiple disputes to correct the information. Midland now moves for summary judgment.

After discovering the Midland Account was still appearing on her report, Plaintiff sent a dispute package to each of the CRAs in December 2022, which was received in January 2023. The dispute letter stated Plaintiff did not owe the debts. Each of the CRAs notified Midland of her dispute. Each CRA thereafter notified Ms. Kolbasko that Midland had "verified" the accounts and information as accurate, and as a result, the inaccurate information continued to appear on her credit reports. The Midland employee did not contact any outside law firm to determine whether the accounts were valid, whether the accounts had been settled, or if the lawsuit had been dismissed. This was inconsistent with Midland's policy.

Plaintiff sent another round of disputes to the CRAs in January 2023, which were received in February 2023. The dispute letter stated that Plaintiff did not owe

the debts. Each of the CRAs notified Midland of her dispute. Equifax and Experian thereafter notified Plaintiff that Midland had verified the accounts and information as accurate, and as a result, the information continued to appear on her credit reports. Trans Union deleted the Midland accounts.

Midland received an Automated Credit Dispute Verifications ("ACDV") on February 13, 2023, which included the words "judgment attached." The Midland employees who handled the ACDV did not contact the outside law firm to verify the status of the debts, or whether the case had been dismissed.

Plaintiff sent another round of disputes to the credit reporting agencies in March 2023. The dispute stated she did not owe the debts. Plaintiff again included a copy of the judgment of dismissal in the Midland lawsuit.  Plaintiff included a copy of the Settlement Agreement. Each of the CRAs notified Midland of her dispute. Equifax and Experian thereafter notified Plaintiff that Midland had verified the accounts and information as accurate, and as a result, the information continued to appear on Plaintiff's credit reports.

As a result of these investigations, Midland instructed the CRAs to continue reporting inaccurate information.

Plaintiff subsequently brought this action, alleging that Midland's conduct caused her emotional distress stating that she suffered "loss of sleep and appetite, and feelings of stress, anxiety, shame and depression," caused by Midland's credit

reporting and failure to delete the accounts. Plaintiff also claims that she was denied credit "while the Midland account was the sole account reported as a 'public record.'"

To support her emotional distress claim, Plaintiff relies on her own declaration and that of her husband.

Plaintiff presented no evidence that she was medically treated for her symptoms. She has not produced expert testimony regarding her emotional harm. She has also not produced credit denials, adverse action notices, or other evidence that Midland's reporting caused her pecuniary harm.

Plaintiff brings claims against Midland under 15 U.S.C. § 1681n and § 1681o of the FCRA for negligently and willfully failing to employ reasonable procedures to assure maximum possible accuracy in her credit report in violation of 15 U.S.C. § 1681e(b) and violation of the FDCPA for misrepresenting the character, amount, or legal status of the alleged debt in violation of 15 U.S.C. §1692e(2)(A); communicating to a credit report information which is known or should have been known to be false in violation of 15 U.S.C. §1692d(8); and utilizing false, deceptive, or misleading representation or means in connection with the collection of an alleged debt in violation of 15 U.S.C. §1692e. She seeks actual, statutory, and punitive damages. Midland moves for summary judgment to dismiss all claims against it.

## Standard of Review

> "Summary judgment is appropriate if there is no genuine dispute of material fact and a party is entitled to judgment as a matter of law." Huynh v. Dep't of Transp., 794 F.3d 952, 958 (8th Cir. 2015). In other words, "[t]he mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

*Becker v. City of Hillsboro, Missouri*, No. 23-3367, 2025 WL 38068, at *3 (8th Cir. Jan. 7, 2025). The moving party must also demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Paulino v. Chartis Claims, Inc.*, 774 F.3d 1161, 1163 (8th Cir. 2014). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

To preclude the entry of summary judgment, the non-moving party must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The evidence is viewed "in the light most favorable to the nonmoving party," which includes drawing all reasonable inferences in that party's favor. *Pedersen v. Bio-Med. Applications of Minn*., 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541 (8th Cir. 2014)). But "[c]redibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge."

*Liberty Lobby*, 477 U.S. at 255. A fact is material if it might affect the outcome of

the lawsuit. *Id*. "To defeat a motion for summary judgment, a party may not rest

upon allegations, but must produce probative evidence sufficient to demonstrate a

genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs*.,

553 F.3d 1110, 1113 (8th Cir. 2009). "The mere existence of a scintilla of evidence

in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff." *Id*. at 252.

## Discussion

**FCRA**

The FCRA requires furnishers to provide accurate information to CRAs. See

15 U.S.C. § 1681s-2(a). Specifically, data furnishers are prohibited from

"furnish[ing] any information relating to a consumer to any consumer reporting

agency if the person knows or has reasonable cause to believe that the information

is inaccurate." *Id.* It also imposes duties on furnishers to conduct investigations

when a dispute is raised about the information reported. The FCRA " 'describes the

duties of any entity which provides information to a Credit Reporting Agency

when such entity is notified of a dispute regarding the completeness or accuracy of

the furnished information.' " *Meyer v. F.I.A. Card Servs., N.A*., 780 F. Supp. 2d

879, 882–83 (D. Minn. 2011) (quoting *Johnson v. United States Dep't of Def.*, No. 99-cv-1699 (DWF/AJB), 2000 WL 33956225, at *3 (D. Minn. Oct. 17, 2000)).

When a CRA contacts a furnisher of information about disputed credit information, the furnisher "is obligated to 'conduct an investigation with respect to the disputed information' and report the results to the consumer reporting agency." *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 915 (8th Cir. 2014) (quoting § 1681s-2(b)). To fulfill this obligation, a furnisher is required to "review all relevant information provided by the consumer reporting agency" and, if it finds the disputed information to be inaccurate or incomplete, the entity is obligated to promptly modify or delete the inaccurate information. 15 U.S.C. § 1681s-2(b)(1)(B), (E)(ii).

Under the statute, once a furnisher receives notice of a debtor's CRA dispute, it is required to " 'conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified.' " *Malm v. Household Bank (SB), N.A.*, No. 03-cv-4340 (ADM/AJB), 2004 WL 1559370, at *4 (D. Minn. July 7, 2004) (quoting *Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426, 431 (4th Cir. 2004)). Generally, "whether an investigation is 'reasonable' under the FCRA is a question of fact for the jury." *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1039 (D. Minn. 2010).

The FCRA aims to "ensure fair and accurate credit reporting, promote efficiency in the banking system and protect consumer privacy." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). The Act requires furnishers of information to follow certain procedures in furnishing consumer credit data.

(b) Duties of furnishers of information upon notice of dispute

(1) In general

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C.A. § 1681s-2(b)

Plaintiff's Amended  Complaint alleges that Midland failed to employ reasonable procedures and failed to reasonably reinvestigate after she disputed the Midland Account.

Plaintiff alleges that Midland violated the FCRA by negligently and willfully failing to employ reasonable procedures to assure maximum possible accuracy in her credit report. To survive summary judgment, Plaintiff must show that: "(1) defendant failed to follow reasonable procedures intended to assure the accuracy of its reports, (2) reported inaccurate credit information about her, (3) she suffered harm and (4) Defendant's failure to follow reasonable procedures was the cause of her harm." *Paul v. Experian Info. Sols., Inc*., 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011) (citing cases).

The FCRA does not hold furnishers of credit information strictly liable for inaccuracies in credit reports, so even if the Midland Account was inaccurate to include on Plaintiff's credit report, that alone is insufficient. *Hauser v. Equifax, Inc*., 602 F.2d 811, 814–15 (8th Cir. 1979). Instead, the inaccuracy must have resulted from the failure to "follow reasonable procedures to assure maximum possible accuracy." *Paul*, 793 F. Supp. 2d at 1101; 15 U.S.C. § 1681e(b).

Plaintiff claims Defendant failed to follow reasonable procedures to ensure accuracy in her credit report. Plaintiff alleges that Defendant violated 15 U.S.C.

§§1681n and 1681o by negligently and willfully failing to conduct reasonable investigations into her disputes she sent to the CRAs.

In the event a consumer provides a CRA with a notice of dispute about the accuracy of information reported about him or her, the CRA must then provide notice of such disputes to furnishers, which triggers certain duties for these furnishers.

Under section 1681s–2(b), the furnisher has a duty to "conduct an investigation with respect to the disputed information," "report the results of the investigation to the [CRA]," and, if the investigation shows that information is incomplete or inaccurate, the furnisher must inform relevant CRAs of any incomplete or inaccurate information. Id. § 1681s–2(b)(1)(A)–(b)(1)(D); *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 907–08 (8th Cir. 2011) (citing 15 U.S.C. § 1681s–2(b) and describing furnisher reinvestigation duties).

Further, if a furnisher determines, after investigation, that information is inaccurate, incomplete, or not capable of verification, then it must either "(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." 15 U.S.C. § 1681s–2(b)(1)(E). *Carrillo v. Credit Acceptance Corp.*, No. 23-CV-03661 (JMB/DLM), 2024 WL 4124722, at *3 (D. Minn. Sept. 9, 2024).

The parties' arguments question the reasonableness of Midland failing to confirm the dismissal of the lawsuit, Plaintiff would like the Court to conclude that because she sent the information regarding the settlement of the case between herself and Midland, it was unreasonable for Midland not to check further. Midland argues it was not unreasonable for its employees to miss the unusual error of outside counsel placing the wrong code on the matter so that the settlement did not show up on its internal records.

The Court finds that whether it was reasonable for Midland to fail to discover outside counsel's error raises a genuine dispute of material fact.

Plaintiff argues that Midland willfully violated 15 U.S.C. § 1681n. Willfulness is not an element of a FCRA claim, but Plaintiff may be entitled to statutory or punitive damages if Midland's violation was willful. 15 U.S.C. § 1681n(a)(1)–(2). She can also recover statutory and punitive damages even if she did not suffer actual damages, so long as the violation was willful. *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) ("Actual damages are not a statutory prerequisite to an award of punitive damages under the [FCRA]." (quotation omitted) (alteration in original)). To establish willful noncompliance with the FCRA's requirements, Plaintiff must demonstrate that Midland "knowingly and intentionally committed an act in conscious disregard for the rights of others," though she "need not show malice or evil motive." *Id*. Reckless

conduct involves "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (citations and internal quotation marks omitted).

Plaintiff's willfulness argument stems mostly from Midland's policy to delete accounts associated with debts that have been subject to dismissal with prejudice in state court. However, at most, Midland's actions could be attributed to negligence, not willfulness. It is admitted that outside counsel did not supply the correct code in order to have the account closed. The employees researching the dispute did not discover the error, but there is nothing in this record to show they took specific actions against Plaintiff. There is no evidence of knowingly and intentionally committing the responses to the dispute with conscious disregard to Plaintiff's rights. While Midland could have done more, and in fact has subsequently changed its policy to do more to enhance its investigation procedures, not doing more does not constitute a willful violation of the FCRA. FCRA does not require furnishers of information to have the best possible procedures but rather that they be reasonable. Plaintiff has not presented sufficient evidence of a knowing and intentional violation of the FCRA and is therefore unable to establish willfulness as a matter of law. As a result, the Court will grant summary judgment to Midland on the question of willfulness.

Even if Plaintiff had presented sufficient evidence demonstrating Midland acted willfully or unreasonably, Plaintiff bears the burden of showing actual damages resulted from Midland's alleged reporting error. 15 U.S.C. § 1681o(a)(1); *Peterson v. Experian Info. Sols*., 44 F.4th 1124, 1126 (8th Cir. 2022). Plaintiff has failed to satisfy this burden.

Consumers are entitled to recover actual damages caused by a furnisher's violation of the FCRA, whether the violation was negligent or willful. 15 U.S.C. §§ 1681n(a)(1)(A), 1681o(a)(1). Actual damages under the FCRA include pecuniary harm, such as denial of credit opportunities or higher interest rates, as well as emotional distress damages. *Edeh*, 974 F. Supp. 2d at 1242; *Taylor v. Tenant Tracker, Inc*., 710 F.3d 824, 828 (8th Cir. 2013). Plaintiff has not presented evidence that she suffered loss of credit opportunities or similar damages because of Midland's reporting. Instead, her damages are based entirely on her emotional distress.

"Mental pain and anxiety can constitute actual damages" under the FCRA, "but emotional distress damages must be supported by competent evidence of 'genuine injury,' which 'may be evidenced by one's conduct and observed by others.' " *Taylor,* 710 F.3d at 828 (quoting *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)). A plaintiff's sole testimony may be sufficient to establish emotional distress under the FCRA, but the testimony must show a "concrete" and "genuine

injury." *Edeh*, 974 F. Supp. 2d at 1244; see also *Sherman v. Sheffield Fin., LLC*, 627 F. Supp. 3d 1000, 1017 (D. Minn. 2022) (quoting same). Whether a plaintiff suffered a physical injury or received medical treatment because of the emotional distress are factors that courts will consider in the analysis, though they are not dispositive. *Taylor*, 710 F.3d at 829; *Sherman*, 627 F. Supp. 3d at 1017. Courts have denied emotional distress damages under the FCRA where the consumer plaintiff "suffered no physical injury, [ ] was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress*." Peterson*, 44 F.4th at 1128 (citations omitted); accord *Taylor*, 710 F.3d at 829.

> Like in other decisions where we have denied damages for emotional distress, the record reveals that Peterson "suffered no physical injury, she was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress." *Forshee*, 178 F.3d at 531; Taylor, 710 F.3d at 829. Peterson's declaration and interrogatory responses, which variously characterize her exacerbated mental health problems as "extreme," "incredible," and "immense," amount to self-serving and conclusory statements incapable of surviving summary judgment. See *Keiran v. Home Cap., Inc*., 858 F.3d 1127, 1132 (8th Cir. 2017); *McKenny v. United States*, 973 F.3d 1291, 1303 (11th Cir. 2020) (noting that "a sworn interrogatory response is treated like an affidavit on summary judgment"). Peterson fleetingly testified that her Experian report was a "major part of my—my anxiety went through the roof. ... And I just became super depressed." Still, when asked whether those conditions were "related to your credit report or is it just related to ... making good financial choices," Peterson responded, "It's—it's all of it." To avoid summary judgment, "a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). In these circumstances, a reasonable jury would not award emotional distress damages.

*Peterson*, 44 F.4th at 1128.

In presenting her emotional distress damages, Plaintiff relies on her own declaration as well as the declaration of her husband, who essentially declares what Plaintiff declares. The declarations generally describe that Plaintiff has experienced shame and anxiety and depression. She declares she didn't want to go out or talk to anyone. She was afraid to apply for future credit. She felt like she had PTSD. The Court finds this evidence of Plaintiff's emotional distress is not "competent evidence of genuine injury" sufficient to create a genuine issue of material fact as to the question of damages. *Taylor*, 710 F.3d at 828; *cf. Berscheid v. Experian Info. Sols., Inc.,* No. CV 22-086 (JRT/LIB), 2024 WL 922040, at *1–7 (D. Minn. Mar. 4, 2024), reconsideration denied, No. CV 22-086 (JRT/LIB), 2024 WL 2091989 (D. Minn. May 9, 2024).

**FDCPA**

The FDCPA's purpose "is to eliminate abusive debt collection practices by debt collectors, and to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 318-19 (8th Cir. 2004). Debt collectors cannot use false, deceptive, misleading, unfair, or unconscionable means

to collect or attempt to collect a debt, including the failure to communicate that a disputed debt is disputed. 15 U.S.C. §§ 1692e.

The FDCPA authorizes private lawsuits and fines in order to prevent debt collectors from engaging in prohibited practices. *Coyne v. Midland Funding, LLC*, 895 F.3d 1035, 1037 (8th Cir. 2018) ("[t]he FDCPA is a consumer-protection statute authorizing private lawsuits and weighty fines to deter wayward collection practices").

To state a prima facie case for a violation of the FDCPA, a plaintiff must allege: (1) the plaintiff is a consumer; (2) the defendant is a debt collector; (3) the debt collector attempted to collect a debt; and (4) the debt collector violated the FDCPA in some manner. *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1001 (8th Cir. 2011). See also *Webb v. SuddenLink Commc'ns*, 2010 WL 3940905, at *1 (E.D. Mo. Oct. 6, 2010).

Midland asserts it is entitled to a bona fide error defense. The FDCPA provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

To establish the bona fide error defense, a debt collector must prove by a preponderance of the evidence that its FDCPA violation was unintentional and was caused by an objectively bona fide error (i.e., one that is plausible and reasonable) made despite the use of procedures reasonably adapted to prevent that specific error. *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 420 (8th Cir. 2008). As several courts have recognized, "the exception is a narrow one." *Micks v. Gurstel Law Firm, P.C.*, 365 F. Supp. 3d 961, 975 (D. Minn. 2019) (Tostrud, J.) (citing cases). To prevail on a bona fide error defense, a defendant must come forward with evidence showing:

(1) Its FDCPA violations were not intentional;

(2) It made an error;

(3) The error was reasonable;

(4) It maintained procedures reasonably adapted to prevent the error; and

(5) The alleged FDCPA violations "resulted from" the identified error.

*Id.* "A failure as to any one of these elements is dispositive." *Id.*

*Kowouto v. Jellum L., P.A.,* No. 22-CV-2655 (SRN/DLM), 2024 WL 4267223, at *9 (D. Minn. Sept. 23, 2024).

As discussed, *supra*, whether the failure to discover the settlement by Midland's employees was reasonable is a question of fact which must be decided by the finder of fact. Likewise, whether the failure to follow up on the disputes after Plaintiff had submitted them several different times likewise raises an issue of

fact. Summary Judgment is therefore denied as to Defendant's motion on the FDCPA claim.

Based on the above discussion regarding Plaintiff's damages, the Court agrees with Defendant that Plaintiff's damages should be limited to statutory damages, as Plaintiff has not presented evidence of damages as a result of the credit reporting.

### Conclusion

Genuine disputes remain as to the reasonableness of Defendant's actions. However, Plaintiff has failed to present sufficient evidence of concrete damages as a result of Defendant's action. Defendant is entitled to judgment as a matter of law on Plaintiff's negligent and willful violations of 15 U.S.C. §§1681o and 1681n.

Plaintiff's claim against Defendant for a violation of the FDCPA remains. Damages, if any, shall be limited to statutory damages under the Act.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc No. 78] is granted in part and denied in part as provided herein.

Dated this 13th day of January, 2025.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE